210 July 30, 2025 No. 670

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

EMILY ANNE SULLIVAN,
*Defendant-Appellant.*

Linn County Circuit Court
20CR57180; A181380

Michael B. Wynhausen, Judge.

Submitted March 6, 2025.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Joel C. Duran, Deputy Public Defender, Oregon Public Defense Commission, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Michael A. Casper, Assistant Attorney General, filed the brief for respondent.

Before Aoyagi, Presiding Judge, Egan, Judge, and Joyce, Judge.

AOYAGI, P. J

Affirmed.

**AOYAGI, P. J.**

Defendant was convicted of driving under the influence of intoxicants (DUII), ORS 813.010, and reckless driving, ORS 811.140. On appeal, she assigns error to the trial court's admission of evidence that she was previously charged with DUII and got that charge dismissed by completing diversion, which the trial court deemed relevant to the reckless driving charge. Defendant argues that there is no nonpropensity reasoning by which that evidence was relevant and that, consequently, the trial court was required to exclude that evidence under OEC 403. Although existing case law from both this court and the Supreme Court is against defendant's position, she asks that we revisit that case law in light of *State v. Skillicorn*, 367 Or 464, 479 P3d 254 (2021). After defendant filed her brief, the Supreme Court decided *State v. Davis*, 372 Or 618, 553 P3d 1017 (2024), which sheds additional light on the analytical path that courts must take in deciding whether to admit evidence of prior acts. We conclude that the existing body of case law survives *Skillicorn* and, accordingly, affirm.

Defendant was charged with DUII and reckless driving. Before trial, the state moved *in limine* for the admission of evidence that defendant had previously been charged with DUII and completed diversion, which included attending a victim impact panel, resulting in the dismissal of the previous charge. The state contended that the evidence was relevant to the reckless driving charge through a nonpropensity chain of reasoning, specifically to show that, when defendant drove after drinking alcohol, she acted with recklessness as to the fact that her driving endangered persons or property. A person commits reckless driving when the person "[r]ecklessly drives a vehicle upon a highway or premises open to the public in a manner that endangers the safety of persons or property." ORS 811.140(1)(a). "Recklessly" is defined as follows:

> "'Recklessly' when used with respect to a result or to a circumstance described by a statute defining an offense, means that a person is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of

such nature and degree that disregard thereof constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation."

ORS 161.085(9).

Defendant opposed the motion, except as to the victim impact panel evidence. She acknowledged that evidence that she attended a victim impact panel—a type of presentation that includes watching video of crashes caused by intoxicated drivers and hearing from DUII crash victims and loved ones of people killed in DUII crashes—was probative as to whether, when defendant drove under the influence of alcohol, she was aware of and consciously disregarded a risk that doing so is dangerous to persons or property. But defendant disputed the relevance of the evidence that she had previously been charged with DUII and gotten that charge dismissed by completing diversion. Defendant argued that such evidence was not probative of her subjective awareness of the risk that driving under the influence of alcohol is dangerous and therefore not probative of recklessness. She pointed out that knowing that something is illegal is different from knowing that it is dangerous to persons or property. Defendant also argued that even if it was otherwise admissible, the evidence should be excluded under OEC 403, because its probative value was substantially outweighed by the risk of unfair prejudice, given the risk that the jury would use it for propensity purposes (reasoning that defendant was more likely to have committed DUII in this instance because she had committed DUII before).

The trial court granted the state's motion *in limine*. Citing case law that we discuss below, the court ruled that previous charges, dismissals, and convictions for DUII are relevant to show a defendant's awareness of the risk that driving under the influence of intoxicants endangers people and property. As for OEC 403, the court agreed with the state that OEC 403 balancing was unnecessary when admitting evidence under OEC 404(4). It nonetheless conducted OEC 403 balancing as a precautionary matter, and it concluded that the risk of unfair prejudice did not substantially outweigh the evidence's probative value. The court indicated that it would give a limiting instruction to the jury to

consider the evidence only in evaluating whether defendant was aware of the dangers of driving under the influence of alcohol as relevant to the reckless driving charge.

The case proceeded to trial, and the jury found defendant guilty of both DUII and reckless driving. On appeal of the resulting judgment of conviction, defendant assigns error to the court's ruling on the motion *in limine*. The parties largely reprise their trial court arguments, except that the state now concedes that OEC 403 balancing was required. *See State v. Williams*, 357 Or 1, 19, 346 P3d 455 (2015) ("[T]he admission of evidence under OEC 404(4) remains subject to balancing under OEC 403.").

To be admissible in a criminal trial, evidence of uncharged misconduct must be relevant under OEC 401 and must "withstand OEC 403 balancing to determine whether its probative value is substantially outweighed by its prejudicial effect." *Davis*, 372 Or at 634-35. "We review the trial court's determination that other acts evidence is relevant and admissible under OEC 404(4) for legal error. We review whether otherwise admissible evidence should be excluded as unfairly prejudicial under OEC 403 *** for abuse of discretion." *State v. Hernandez*, 339 Or App 127, 129, 566 P3d 677 (2025) (internal quotation marks and citation omitted).

In seeking admission, the proponent of the evidence first "must articulate a theory of relevance." *Skillicorn*, 367 Or at 475; *accord Davis*, 372 Or at 636. "[T]he proponent must identify the inferences that it wants the factfinder to draw based on the evidence and explain how those inferences make the existence of a fact of consequence more or less probable than it would be without the evidence." *Skillicorn*, 367 Or at 475. Then, the court must evaluate the proposed chain of inferences to determine whether any of the inferences depend on propensity reasoning, that is, whether "'the chain of logical relevance' connecting the evidence to the fact it is proffered to prove relies on 'an inference relating to [a person's] character or propensities.'"[1] *Id.*

---

[1] The *Davis* court explained that it may be necessary to "parse the other 'acts' into constituent parts, where possible, to aid in determining the degree of character present in the proponent's theory of relevancy." *State v. Martinez*, 335 Or App 643, 654, 559 P3d 907 (2024), *rev den*, 373 Or 712 (2025); *see Davis*, 372 Or at 637 n 11 (so explaining).

at 476 (quoting *State v. Johnson*, 340 Or 319, 338, 131 P3d 173 (2006) (brackets in *Skillicorn*)).

If the proposed chain of inferences directly implicates a person's character or propensities, such that its relevance "derive[s] primarily or substantially from character," then the evidence "is likely to be excluded" under OEC 403. *Davis*, 372 Or at 636, 637; *see also Skillicorn*, 367 Or at 477-79 (noting that the prohibition on propensity evidence in criminal trials is "a fundamental aspect of our legal system" that "can be traced back more than three centuries" and that it serves "to protect the fairness of trials and the accuracy of verdicts" (internal quotation marks omitted)); *State v. Martinez*, 335 Or App 643, 651, 559 P3d 907 (2024), *rev den*, 373 Or 712 (2025) ("OEC 403 balancing must be conducted to preclude the admission of concededly relevant evidence that has the capacity to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." (Internal quotation marks omitted.)).

If the proposed chain of inferences does not clearly or directly implicate a person's character or propensities, then the court must look more closely at the evidence to determine whether "character reasoning [is] implicit *to some degree*" in its relevance, or whether, "despite a non-character purpose being offered by the proponent of the evidence, a jury or factfinder could perceive the evidence as relying on character and action in conformity with character as its source of relevance to the trial." *Davis*, 372 Or at 636 (emphasis in original). In conducting that assessment, the court may consider "how the proffered evidence would have fared under" OEC 404(3)—that is, whether it is probative of some fact at issue in the case based on a chain of inferences that does not include any character or propensity reasoning—as admissibility under OEC 404(3) "will have a significant effect on whether the trial court admits that evidence under the balancing required by OEC 403." *Id.* at 635 (internal quotation marks omitted). Ultimately, the court has discretion to "admit evidence that does not primarily or substantially derive its relevance from character-based propensity reasoning." *Martinez*, 335 Or App at 654-55. "[W]hether a court acts within its permissible range of discretion

to admit such evidence may depend on whether the court took action to mitigate any unfair prejudice, such as redacting inflammatory details, limiting the state's use of the evidence, and instructing the jury on how it may consider the evidence." *Id.* at 655.

With those general principles in mind, we consider existing case law on the relevance of prior DUII arrests, charges, and convictions to prove recklessness.

In *State v. Johnstone*, 172 Or App 559, 561, 19 P3d 966 (2001), the defendant was charged with first-degree manslaughter in connection with a fatal crash that he caused while under the influence of alcohol. A conviction required proof that he acted recklessly "under circumstances manifesting extreme indifference to the value of human life." *Id.* at 566-67; *see generally State v. Giron-Cortez*, 372 Or 729, 744, 557 P3d 505 (2024) ("[R]eckless assault under circumstances manifesting extreme indifference to the value of human life must go well beyond ordinary reckless assault and take into account circumstances before, during, and after the act that causes the harm." (Internal quotation marks omitted.)). We held that evidence of a prior DUII arrest and diversion agreement was admissible as relevant to whether the defendant had the requisite reckless state of mind at the time of the crash, that is, "whether he had a subjective awareness of the risks to which he exposed others." *Johnstone*, 172 Or App at 567. It showed that he "had not merely had the *opportunity* to educate himself about the dangers of drinking and driving, he had the *obligation* to do so under his diversion agreement." *Id.* at 566-67 (emphasis in original).

Notably, *Johnstone* involved a prior DUII charge and diversion agreement, not a prior DUII conviction. However, in *State v. Hardman*, we inaccurately described *Johnstone* as involving a prior DUII conviction:

"[In *Johnstone*], we reasoned that the defendant's awareness of his 'obligation' to participate in a diversion program was itself a basis for inferring his subjective awareness of the risks to which drinking and driving exposed others. We viewed the defendant's prior DUII *conviction* as a basis for inferring such an awareness as well. In short, rather

than embrace a requirement that the evidence must show that a defendant had been formally informed or actively educated about the dangers of drinking and driving, we rejected such a requirement in *Johnstone*. In effect, we recognized that people, as a matter of their common sense, can gain a heightened awareness of those risks from the fact of a DUII *conviction* and the fact that they are obligated to participate in a diversion program, without more."

196 Or App 522, 530, 102 P3d 722 (2004) (emphases added; internal citation omitted). It appears that we may have meant to refer to a DUII charge there, rather than a DUII conviction, given that our reasoning depended on the diversion agreement, which is something that arises from a charge, not a conviction. In any event, our actual holding in *Hardman* was that the trial court did not err in admitting evidence that the defendant had previously been involved in a car accident after drinking, which resulted in serious injuries, DUII charges against him that were still pending, and a release agreement that was still in place wherein he had agreed not to drink and drive, because that evidence showed that the defendant had "a heightened awareness that alcohol and driving do not mix," making it relevant to whether he was subjectively aware of the risks of drinking and driving. *Id*. at 529.

A few years later, in *State v. Wyant*, 217 Or App 199, 203, 206, 175 P3d 988 (2007), *rev den*, 344 Or 558 (2008), we stated that the defendant's "prior DUII convictions and participation in a DUII probation program were relevant to prove that [he] acted recklessly under circumstances manifesting extreme indifference to the value of human life," an element of an assault charge against him, en route to analyzing a due process issue that was the actual focus of our opinion. The totality of our discussion of relevance was the above quote, followed by a string cite to three cases. *Id*. Notably, only one of those cases involved a prior DUII conviction—*State v. Hopkins*, 173 Or App 1, 21 P3d 134 (2001), *rev den*, 333 Or 655 (2002).[2] In *Hopkins*, which involved charges arising from a car accident, we held that the defendant's prior DUII conviction was relevant and admissible

---

[2] One of the other cited cases was *Johnstone*, 172 Or App at 567, but we accurately described it as involving the relevance of evidence of "past participation in DUII diversion program," not a prior DUII conviction. *Wyant*, 217 Or App at 203.

because the defendant had made certain admissions to a police officer at the scene of the accident, which he did not dispute were admissible, and the prior DUII convictions provided needed context to understand the admissions. 173 Or App at 4 ("In view of defendant's admissions regarding his involvement with the court system relating to drinking and driving, the evidence of his previous DUII convictions was relevant to explain what defendant was referring to when he made the admissions.").

By 2009, we viewed the law as settled that prior DUII convictions are relevant to prove recklessness, even without a connection to a diversion program or victim impact panel. In *State v. Coen*, 231 Or App 280, 282, 220 P3d 423 (2009), *aff'd sub nom State v. Moore/Coen*, 349 Or 371, 245 P3d 101 (2010), *cert den*, 563 US 996 (2011), the defendant was charged with second-degree manslaughter, which requires a reckless mental state, and DUII, after a fatal car crash. The trial court admitted evidence that the defendant had participated in a diversion program in 1992, but it excluded evidence of a prior DUII conviction from 1997. *Id.* at 283. The state appealed, challenging the latter ruling. *Id.* at 284. We readily rejected the defendant's argument that the prior DUII conviction was irrelevant, stating that "our case law clearly establishes that evidence of defendant's prior DUII conviction is relevant to whether defendant had * * * knowledge of the risks involved in drinking and driving on the date of the accident." *Id.* (internal quotation marks omitted). We cited *Wyant* and *Hardman* for that proposition and said nothing further on the issue. *Id.* at 284-85.[3]

The Supreme Court took review in *Moore/Coen* and affirmed our decision, including agreeing that the defendant's prior DUII conviction was relevant to prove

---

[3] Although both *Wyant* and *Hardman* involved crimes requiring extreme indifference to the value of human life, which is a heightened form of recklessness, we have recognized that the relevance principles from those cases are equally applicable to cases involving ordinary recklessness. *State v. Cavaner*, 206 Or App 131, 134-35, 135 P3d 402, *rev den*, 341 Or 197 (2006), *overruled on other grounds by State v. Brumbach*, 273 Or App 552, 359 P3d 490 (2015), *rev den*, 359 Or 525 (2016) ("It is true that *Johnstone* and *Hopkins* involved defendants charged with recklessness under circumstances manifesting extreme indifference—as opposed to mere recklessness. Nevertheless, the reasoning of both cases—that past participation in a diversion program is relevant to establishing a defendant's subjective awareness of the risks of driving while intoxicated—applies here.").

recklessness. *Moore/Coen*, 349 Or at 374. The Supreme Court recounted how the state had sought to admit the 1992 diversion evidence and 1997 prior conviction "to prove that defendant had acted with a reckless mental state at the time of the collision, *i.e.*, defendant knew of the risks involved in driving under the influence of intoxicants"; how the trial court had excluded the 1997 conviction on the basis that, even if it was relevant, it was clearly propensity evidence; and how the Court of Appeals had rejected the defendant's efforts to uphold the ruling, including "[r]elying on its prior case law" to hold "that evidence of a prior DUII conviction is relevant to demonstrate a defendant's state of mind in a prosecution for vehicular manslaughter." *Id*. at 387-88. The Supreme Court itself then addressed relevance, briefly but unequivocally: "[T]he state offered the DUII evidence to prove that defendant had acted with a reckless mental state, an element of second-degree manslaughter, for which the state had the burden of proof. *Without question, that evidence is relevant for the purpose for which the state intends to offer it.*" *Id*. at 391 (emphasis added). The court did not explain its specific reasoning. *See id*.

With that understanding of the case law, we return to the present case. As an initial matter, we agree with defendant that the jury was required to find that she was under the influence of alcohol when she drove on the charged occasion *before* reaching the question of her mental state for reckless driving, but we disagree that it follows from that alone that the prior DUII arrest is propensity evidence. Indeed, as we understand it, the trial court recognized the need for a limiting instruction precisely because it wanted to ensure that the jury would first decide whether defendant drove under the influence on this occasion and, if it found that she did, only then consider her prior DUII arrest and diversion as relevant to whether she acted recklessly for purposes of the reckless driving charge. That the conduct itself had to be proved by other evidence does not mean that this evidence was necessarily admitted for a propensity purpose.[4]

---

[4] This case is unlike *State v. Levasseur*, 309 Or App 745, 483 P3d 1167, *adh'd to as clarified on recons*, 312 Or App 733, 489 P3d 630, *rev den*, 368 Or 788 (2021), on which defendant relies. In that case, the jury was instructed to consider the

Defendant's better argument is the one that she made to the trial court—that, although evidence that she attended a victim impact panel was relevant and admissible as to her mental state, evidence of her prior DUII arrest and participation in a diversion program to avoid a conviction was relevant only as propensity evidence. The gist of that argument is that one can reasonably infer from a prior DUII arrest or conviction that a person is aware that driving under the influence of intoxicants is *illegal*, but that it does not necessarily follow that the person has a greater awareness than anyone else that it is dangerous to persons or property. But we must reject that argument too, because it is at odds with existing case law, and we are unpersuaded that *Skillicorn* implicitly overruled the existing case law. We understand existing case law to establish that a prior DUII arrest, charge, or conviction is relevant and admissible to show that the defendant was aware of the dangers of driving under the influence of intoxicants at the time of the charged offense, if that offense involves recklessness, and that that is so regardless of whether the prior arrest, charge, or conviction is tied to a diversion agreement that required attendance of a victim impact panel. Even if we were inclined to revisit our own case law, we would be bound by the Supreme Court's decision in *Moore/Coen*, and we see no way to distinguish an arrest and charge from a conviction for present purposes.

The fact that the evidence is relevant and admissible under existing case law does not foreclose the possibility that there is "character reasoning implicit *to some degree*" in its relevance or that "a jury or factfinder could *perceive* the evidence as relying on character and action in conformity with character as its source of relevance to the trial." *Davis*,

---

defendant's previous crimes only in deciding whether he had a sexual purpose when he touched the victim. However, the evidence's relevance to even that single element depended on a propensity inference, namely that, because the defendant had previously sexually assaulted women after attacking them, he was more likely to have intended to sexually assault this victim after attacking her. The state's theory was that "when defendant isolates and attempts to grab women, he does so in order to sexually assault them—rather than to simply assault or rob them, or to commit other, nonsexual crimes." *Id.* at 753. In this case, by contrast, the evidence's relevance to the element of recklessness on the theory that it shows defendant's awareness of the danger of driving under the influence does not, according to our case law, depend on a propensity inference.

372 Or at 636 (first emphasis in original; second emphasis added). Here, it seems to us that the jury could perceive the evidence of defendant's prior DUII arrest and diversion as showing that she has a propensity to drive under the influence of intoxicants and, thus, is more likely to have done so in this instance—as relevant to her conduct, rather than her state of mind. But that problem can be addressed with a jury instruction, as recognized in *Davis*. The court was not required to exclude the evidence, as defendant contends, but was instead permitted to address the issue with a jury instruction.[5] *See State v. Schmidt*, 296 Or App 363, 367, 439 P3d 500, *rev den*, 364 Or 849 (2019) (where the defendant was charged with DUII and reckless driving, the trial court did not abuse its discretion under OEC 403 by admitting evidence of two prior DUII convictions, as relevant to whether he drove with a reckless mental state, with a limiting instruction).

Affirmed.

---

[5] We recognize that the trial court did not actually give a limiting instruction when the time came to instruct the jury in this case, perhaps having forgotten about it, and neither party raised the issue. Any potential error in not giving the instruction is not at issue in this appeal, as defendant has not assigned error to the jury instructions.