No. 12 January 4, 2024 131

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

JERRIN LAVAZIE HICKMAN,
*Petitioner-Appellant,*

*v.*

BRANDON KELLY,
Superintendent,
Oregon State Penitentiary,
*Defendant-Respondent.*

Marion County Circuit Court
16CV12879; A176849

Daniel Joseph Ahern, Senior Judge.

Argued and submitted December 5, 2023.

Jedediah Peterson argued the cause for appellant. Also on the brief was O'Connor Weber LLC. Jerrin L. Hickman filed the supplemental briefs *pro se*.

Rebecca M. Auten, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Tookey, Presiding Judge, and Egan, Judge, and Kamins, Judge.

KAMINS, J.

Affirmed.

**KAMINS, J.**

Petitioner, who was convicted of murder, appeals a judgment denying him post-conviction relief (PCR). On appeal, he asserts a number of ineffective assistance of counsel claims, directed at both his trial and appellate counsel. We affirm.

On appeal, we review the post-conviction court's denial of relief for legal error and accept the court's implicit and explicit factual findings, provided that there is evidence in the record to support them. *Green v. Franke*, 357 Or 301, 312, 350 P3d 188 (2015).

Petitioner first argues that his trial counsel were inadequate in failing to move for a mistrial or to strike after opening statements, during which the prosecutor stated that three of the state's witnesses would testify that they were afraid to take the stand. However, the witnesses identified by the state had all made statements to support the prosecutor's comments that they were fearful of testifying. Moreover, counsel could have reasonably sought to avoid highlighting the prosecutor's statements, which may have had the disadvantageous effect of emphasizing those statements. *See Strickland v. Washington*, 466 US 668, 690, 104 S Ct 2052, 80 L Ed 2d 674 (1984) (holding that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable").

Petitioner also contends that his trial counsel were inadequate in cross-examining certain state witnesses. First, he takes issue with trial counsels' decision not to further cross-examine a state witness—Porter—about the specifics of the particular cooperation deal he had struck with the state in the hopes of receiving leniency on unrelated pending federal charges. But counsel took reasonable steps to impeach Porter's testimony, despite not questioning Porter more specifically about his sentencing exposure. Counsel thoroughly cross-examined Porter on the matter of his anticipating a reduced sentence and, during closing arguments, emphasized that Porter lacked credibility because he expected to avoid prison-time for his federal charges.

Second, petitioner argues that his trial counsel were inadequate in failing to cross-examine state witness Miller—an eyewitness to the murder who identified petitioner as the perpetrator. But the impeachment information identified by petitioner already came to light during direct examination, and trial counsel knew that the state had secured a strong rehabilitation witness should counsel have impeached Miller on his bias. Counsel reasonably concluded that the benefits of further impeaching Miller were likely to be outweighed by the potential damage that the rehabilitation witness could inflict on the defense's case. Although petitioner contends that other options may have been more advantageous, it is not our place to second-guess counsel's reasonable strategic decisions. *See Hale v. Belleque*, 255 Or App 653, 659, 298 P3d 596, *adh'd to on recons*, 258 Or App 587, 312 P3d 533, *rev den*, 354 Or 597 (2013) ("In reviewing a post-conviction claim of ineffective assistance of counsel, the court will not second-guess a lawyer's tactical decisions unless those decisions reflect an absence or suspension of professional skill or judgment[.]" (Internal quotation marks omitted.)).

Petitioner also raises several claims relating to counsels' handling of an in-court identification of petitioner by D[1]—a state witness. Petitioner correctly points out that trial counsel could have done more to challenge D's identification. However, as the PCR court concluded, a finding of prejudice is foreclosed by the Supreme Court's decision in *State v. Hickman*, 355 Or 715, 748-49, 330 P3d 551 (2014), *modified on recons*, 356 Or 687, 343 P3d 634 (2015) (holding that any error in admitting D's in-court identification was harmless, because there was "little likelihood" that it affected the verdict). Petitioner argues that the Supreme Court's harmlessness analysis does not obligate us to reach the same conclusion in light of trial counsels' purported failure to take sufficient action to address the arrangement with D that she would catch his eye if she were able to positively identify petitioner as the perpetrator (presumably so the prosecutor could then ask D to identify petitioner as the perpetrator during direct examination). According to

---

[1] We refer to that witness by her first initial consistent with the Supreme Court's decision to do so on direct appeal.

petitioner, had trial counsel discussed that signal agreement during closing and argued that the prosecutor might have arrangements with other witnesses that bear on the strength of the state's case, the record before the court would have been different on direct appeal.

We are unpersuaded that that additional line of argument would have materially changed the record before the court. In light of the breadth of evidence supporting petitioner's conviction, there does not exist a reasonable probability that, even had counsel taken additional steps to challenge D's in-court identification and discussed the signal arrangement during closing, the result of the proceeding would have been different. *See Strickland*, 466 US at 694 (to show prejudice under the Sixth Amendment, a petitioner must establish "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different"); *Green*, 357 Or at 323 (to show prejudice under Article I, section 11, a petitioner must establish that counsel's deficient performance "could have tended to affect the outcome of the case" (internal quotation marks and emphasis omitted)).

Next, petitioner argues that his appellate counsel was inadequate in failing to assign error to the trial court's denial of petitioner's motion for new trial on direct appeal. Again, petitioner has not established prejudice. The evidence presented on the motion for new trial did not favor defendant—the trial court found that the new witness testimony supported the state's position, and that the state's new impeachment evidence would likely diminish petitioner's chances of acquittal in a new trial. Accordingly, there is not a reasonable probability that, but for counsel's failure to assign error to the denial of the motion on direct appeal, the result of the appeal would have been different. *Strickland*, 466 US at 694; *Green*, 357 Or at 323.

Finally, we reject the 45 assignments of error advanced by petitioner in his *pro se* supplemental brief without discussion.

Affirmed.