630 September 24, 2025 No. 842

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

KENYATTA ABDULLAH SEAWELL,
*Defendant-Appellant.*

Multnomah County Circuit Court
22CR53821; A182532

Bryan B. Francesconi, Judge.

Argued and submitted August 22, 2025.

James Brewer, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Oregon Public Defense Commission.

Lauren P. Robertson, Assistant Attorney General, argued the cause for respondent. Also on the brief were Dan Rayfield, Attorney General, and Benjamin Gutman, Solicitor General.

Before Tookey, Presiding Judge, Kamins, Judge, and Jacquot, Judge.

JACQUOT, J.

Reversed and remanded.

**JACQUOT, J.**

In this criminal appeal, in two assignments of error, defendant challenges the denial of his motion for a mistrial and an evidentiary ruling declining to conduct OEC 403 balancing before admitting certain evidence. The state argues that the trial court did not err in denying the motion for a mistrial but concedes that the court erred in its evidentiary ruling. Because the trial court did not abuse its discretion in denying the mistrial, and we accept the state's concession as to the evidentiary ruling, we reverse and remand for the court to conduct OEC 403 balancing as required and otherwise affirm.

Defendant was convicted of fourth-degree assault constituting domestic violence, ORS 163.160, and first-degree criminal trespass, ORS 164.255, for an incident involving his then-girlfriend, S. On November 6, 2022, defendant and S argued, which became heated. S spoke with her friend, M, and they developed a "safe word" which, if said by S, instructed M to call the police. At some point the next day, November 7, defendant entered S's apartment. M called S's phone, but defendant answered, so she asked to speak with S. S said the safe word and hung up. M called the police, and when they arrived, they witnessed defendant hit S in the head. The police arrested defendant.

Before trial, defendant moved to exclude "any evidence of any prior incidents involving alleged acts between [defendant] and [S]." The court ruled that prior bad acts would not be admitted. At trial, in response to a prosecutor question, M testified that she and S had established the safe word on November 6 so that if S was feeling unsafe, M knew she should call the police. The prosecutor asked "what was the conversation that led up to choosing this term? What was the purpose of choosing this word?" M responded that "[S] had had a previous incident with [defendant]." Defendant objected to that testimony and, outside the presence of the jury, moved for a mistrial, arguing that M's testimony referred to inadmissible other act evidence. The state responded that M was talking about the November 6 incident and proposed a clarifying statement. Defendant

argued that clarification and a curative instruction would both be insufficient to cure the prejudice.

The court stated that if M was discussing the November 6 incident, the statement would be "part of the context of this situation, it's not a prior bad act, and that would not be the basis of a mistrial." The court asked M to clarify, and she explained, outside the presence of the jury, that "[t]here was many incidents, you know? He smacked her once because she said something wrong while she was on the computer." The court reiterated that evidence of prior bad acts was inadmissible and "if [M is] introducing that of her own choosing, it's a mistrial." It gave the state an opportunity to speak with M.

After a break, the state explained that it "anticipate[d]" that if it asked M to clarify why she and S established a safe word, M would testify that it was because of what happened on November 6. It argued that the statement could be cured with further testimony because the initial statement was ambiguous. Defendant argued that it was clear M was referring to an incident before November 6, and that a curative instruction could not cure the prejudice.

After relistening to the testimony, the court proposed three options: a mistrial, the state asking a follow-up question, and striking the statement. It allowed the state to ask a follow up question, in front of the jury, and M gave the following testimony:

"Q:   [M], you were talking about when you and [S] had come up with a safe word on November 6th. Do you remember what time of day that was?

"A:   I don't, sorry.

"Q:   Okay. Do you remember what had happened earlier that day leading up to having this conversation about a safe word?

"A:   [S] had asked for her key back.

"* * * * *

"Q:   Okay. So when the two of you were discussing a safe word, what was the plan about when that would be used or how that would be used?

"A:   I said I would call her, and if she said the word that we came up with, \* \* \* that I would call 911."

Defendant cross-examined M and received similar responses. After M's testimony, defendant renewed his motion for a mistrial, arguing that M's statement had not been clarified. The court denied the motion, stating

"I actually think she did give an answer that clarified it. You \* \* \* went back and you asked her, 'When did the safe word come up?' For purposes of this motion, you were looking for an answer. It was not the answer you got. So at this point, I do find that there's a plausible answer that did not result in the introduction of prior bad act evidence. So the motion for a mistrial is denied."

In his first assignment of error, defendant argues that the trial court erred in denying his motion for a mistrial. We review a trial court's decision to deny a mistrial for abuse of discretion. *State v. Osorno*, 264 Or App 742, 747, 333 P3d 1163 (2014). "A trial court abuses its discretion in denying a motion for a mistrial if the effect is to deny the defendant a fair trial." *State v. Cox*, 272 Or App 390, 409, 359 P3d 257 (2015). "A fair trial is that in which the verdict is based on the evidence and not on factors external to the proof at trial." *Osorno*, 264 Or App at 748 (internal quotation marks omitted).

Inadvertent witness testimony referencing an inadmissible and potentially prejudicial subject does not necessarily require a mistrial if it was "isolated and made in passing" and the state "did not capitalize on the disclosure in any way." *State v. Pratt*, 316 Or 561, 583, 853 P2d 827, *cert den*, 510 US 969 (1993) (no abuse of discretion to deny a mistrial based on suggestion that defendant was on death row where reference was isolated and made in passing); *State v. Farrar*, 309 Or 132, 164, 786 P2d 161, *cert den*, 498 US 879 (1990) (no abuse of discretion to deny a mistrial based on witness's mention of a polygraph test because "it was isolated and made only in passing, the results of the test were not disclosed, and the state never argued that the test had any significance to the witness's credibility or to any other issue in the case").

In this case, it is not clear that M's testimony referenced an incident other than what occurred on November 6.

The statement was isolated, made in the context of discussion of the events of November 6, and was ambiguous. It referred to only a singular incident—"[S] had had *a previous incident* with [defendant]"—meaning it did not necessarily point the jury to a history of violence between defendant and S. It is just as likely that the jury understood her statement to reference the November 6 incident, a singular incident that had already been discussed and which the court had ruled was admissible. The state did not capitalize on the statement in some way to suggest that defendant had a history of violence against S. Had the statement referenced plural previous incidents, the outcome may have been different. But in this circumstance, the statement was isolated, ambiguous, made in passing, and was not capitalized on by the state. Accordingly, the trial court was within its discretion to either grant or deny the motion for a mistrial and, therefore, did not abuse its discretion.

In his second assignment of error, defendant argues that the trial court erred when it admitted certain evidence regarding the November 6 incident without performing OEC 403 balancing. The state concedes that the court erred by not engaging in the requested OEC 403 balancing and argues that we should order a limited remand for the court to conduct the required balancing. *See State v. Antonio*, 334 Or App 778, 781, 556 P3d 1053 (2024) (the correct remedy is to remand for "the trial court to conduct the OEC 403 balancing in the first instance, and to thereafter determine whether to reenter the judgment or whether a new trial is necessary and appropriate"). We accept that concession and reverse and remand for the trial court to engage in the requested OEC 403 balancing and for such "other proceedings that may be required as a result of the outcome of that balancing." *State v. Sawyer*, 291 Or App 102, 108, 419 P3d 800 (2018).

Reversed and remanded.